United States District Court
Central District of Illinois
Springfield Division

| | |
|---|---|
| Chad R. Hammond, Plaintiff | |
| v. | Civil Action No. 23-3058 |
| Shelby County Sheriff's Dept. et al. | |
| Defendants. | |

## Second Amended Complaint

Now comes the pro se Plaintiff, Chad R. Hammond, requesting to amend his original and first amended complaint and to address his request for relief to each seperate count of this action.

1. In December of 2022, the Plaintiff began having side pains of which he thought may be contributed to his Cirrohsis/Liver Disease, Liver Damage. He requested to see the jail Nurse (Cathy Stephens).

2. Within a week, he was able to see the nurse but no treatment was given to treat his symptoms although he explained his concern that they may be caused by his diagnosed liver disease. No diagnostic testing was given, such as blood tests, urinalysis, or ultrasound to confirm his disease. The Plaintiff was sent back to his cell in pain.

(1)

3. On December 22, the Plaintiff again requested to see the nurse regarding his liver. At this time he again stated to the nurse that his side was still hurting and that the pain had not receded and may have gotten a little worse in fact. He was told by Nurse Cathy Stephens that there was nothing that could be done and that he'd probably have to wait until he went to prison to have anything done.

4. By this time Mr. Hammond had suffered in pain for nearly a month and after two seperate visits to see the nurse, in which nothing had been done to remedy his pain, knowing the Plaintiff to be suffering from Liver Disease with Liver Damage, Nurse Cathy Stephens had now became involved with Mr. Hammond's pain and suffering and had fallen short of the standard of care required by the nursing community, showing deliberate indifference to Mr. Hammond's serious medical need, knowing he had been diagnosed by a physician to have 'Chronic' Hepatitus with liver damage. (Cirrohsis)

5. At this time Mr. Hammond filed a grievance to address his issue of continued pain with no treatment, hoping either the Sheriff or his staff would intervene to adept a proper policy to treat his condition, and to relieve his pain, involving Sheriff McReynolds personally into this complaint of being untreated by Nurse Cathy Stephens.

6. A letter was provided by Mr. Hammond's primary physician to confirm his diagnosed disease and was distributed to the Sheriff, the nurse, the doctor, and Advanced Correction Healthcare.

7. Mr. Hammond was still suffering daily with side pains which had now progressed and was nearly intolerable but nothing to treat the side pain had yet to be done.

8. On February 6th, the Plaintiff sent a request to the nurse to address his severe pain and explained he didn't want to have to go to the Emergency Room so could she please contact his Primary Physician to see if something could be done. He'd now suffered daily for two months without proper testing to find the source of his pain, as his pain had now traveled into his stomach. His request to see his Primary Physician was denied although he had still not seen the jail doctor by this date and she had been to the jail three times by now.

9. The standard of care of a reasonable nurse or physician should've addressed the source of Mr. Hammond's pain, especially since it was verified in his medical records that he had liver disease. By disregarding Mr. Hammond's complaints and knowing him to have liver disease, either by records or reports by the jail nurse, the jail doctor, Dr. Duran had now became personally involved in Mr. Hammond's care or lack there of.

10. By the standard of care and being responsible of their policies and procedures, Advanced Correctional Healthcare, Inc, should've also learned by record or report of Mr. Hammond's complaints and confirmed diagnosis of liver disease and addressed his care accordingly to his specific needs and not those of policy, personally involving them in the violations

11. By law a municipality is liable for their policies and the practicing of those policies, in which Advanced ~~Healthcare~~ Correctional Healthcare, Inc. policies are the chosen policy accepted according to a response given by the jail administrator on March 22nd of 2023.

12. By following said policies and knowing of the lack of treatment given to Mr. Hammond, forcing him to endure severe pain and suffering for over two months and not trying to find the source of his pain knowing his condition of having a diagnosed serious medical condition, each defendant had personally been indifferent to his serious medical need of severe pain which may have been caused by his Cirrohsis. No diagnostic testing had been done to confirm or deny the source. Mr. Hammond was forced to continue suffering.

13. Mr. Hammond's request to see the nurse on February 9th of 2023 was ignored so he sent another one, but since the nurse only comes once per week, he now had to continue to endure his pain until her next visit. Nearly two weeks since his first request on or about February 6th of 2023.

14. Again Mr. Hammond was told by the jail administrator that they have a protocol to follow and his request to see his primary physician to address his side pain would have to go through the jail doctor, whom had yet to see Mr. Hammond after over two months of severe pain and suffering.

15. On February 14th, Mr. Hammond again requested to see the nurse concerning his severe side pain and what had now become repeated severe stomach pains which concerned Mr. Hammond knowing of how varices can erupt in his stomach due to his diagnosed disease.

16. On this date, February 14th, Mr. Hammond again grieved his issues on the jail's kiosk in hopes someone may intervene and allow him to be seen by a doctor because he didn't want to die in jail and seeing how his symptoms were progressing and nothing was being done to remedy his pain and suffering, he was becoming desperate and suffering unreasonable, cruel and unusual punishment by all of the defendants when their treatment towards him served no penological purpose and was said to be due to policy.

17. The policies practiced by the Medical Staff, namely Advanced Correctional Healthcare, Dr. Duran, Nurse Cathy Stephens, and the Shelby County Sheriff's Department/Detention Center, and Sheriff McReynolds violates Mr. Hammond's 14th Amendment Rights as protected by his Eigth Amendment, as they forced him to endure cruel and unusual punishment by allowing him to suffer from severe stomach and side pain which may or may not have been contributed to his diagnosed liver disease. Each to have personally contributed to said Civil Rights violations.

18. The policies and practices by the Shelby County Sheriff's Department/Detention Center, Sheriff McReynolds, Advanced Correctional Healthcare, Inc., Dr. Duran and Nurse Cathy Stephens have each personally violated Mr. Hammond's Civil Rights protected under the Eighth Amendment and the Fourteenth Amendment's due Process Clause by deliberately being indifferent to Mr. Hammond's serious medical needs, knowing them to have been diagnosed by a physician.

19. All Defendants failed to provide treatment to his pain and suffering which may have or may not have been caused by his diagnosed disease and that they delayed treatment to remedy his unjust pain or suffering or allowed a ineffective policy or treatment to continue knowing it was not proper for his diagnosed disease nor the pain or symptoms he was suffering.

20. On February 15th of 2023, Mr. Hammond again attempted to contact the Sheriff to give him another copy of his diagnosed liver disease but was told staff would put it in his medical file where it is supposed to go, as all have access to these files.

21. Mr. Hammond's symptoms had now escalated into bloody noses, blood in his urine, lower back pain, high blood pressure readings, severe stomach pain and continuous severe side pain. He again filed a request to see the nurse.

22. Continued days of these symptoms were documented by jail staff. Four days to be exact, from February 16th - February 20th. Staff revealed that they could see that something was wrong.

23. On February 21st, Mr. Hammond again grieved the issue on the jails kiosk to address his Civil Rights violations and that they continued to happen as he had yet to be seen by a doctor nor taken to the E.R., and he still not been tested by anything other than vitals to confirm the source of his pain and growing symptoms.

24. In this grievance Mr. Hammond also addressed the fact that jail staff had failed to tell him his attorney had called to advise Mr. Hammond he needed to call his specialist to reschedule an Endoscopy procedure which would've confirmed if he had varices in his stomach but was told by staff that they had forgotten to relay this message but would let him out to make the call the next day.

25. The next day came but Mr. Hammond was denied the call stating he was not allowed to make appointments even though his attorney had called jail staff and told them his client needed to make the call and it was an important procedure, and as well the court (judge) had granted Mr. Hammond to use the booking room phone to call his doctors. The jail went against the courts order and denied him to call and schedule any appointments.

(7)

26. On February 27th, nearly three months since his symptoms began, Mr. Hammond was allowed to see the doctor to address his condition but was not given any diagnostic testing to confirm the source of his growing symptoms. No vitals were taken by the doctor at this time.

27. On March 1st of 2023, Mr. Hammond was taken to the Emergency Room against the recommendations of Dr. Duran, whom had denied the jail's request twice to take Mr. Hammond to the Emergency Room.

28. Mr. Hammond was diagnosed at the E.R. by a simple blood test and urinalysis test to be suffering from elevated liver enzymes as well as a liver or gastro-intestinal infection and it's severity was probably caused by the length of time he had said infection, showing that the policies followed by the Shelby County Sheriff's Dept, Advanced Correctional Healthcare, Dr. Duran, and Nurse Cathy Stephens violated Mr. Hammond's civil rights of cruel and unusual punishment by delaying his care or treatment or failing to provide adequate healthcare services.

29. A CIT Scan showed liver abnormalities and confirmed that Mr. Hammond was suffering from liver disease.

30. A prescription of antibiotics were given by the E.R. Physician and an intravenous administration of Toridol were given to relieve Mr. Hammond's pain.

31. Other than Mr. Hammond's severe side pain caused by his Cirrohsis, his progressive symptoms have all but disappeared other than nose bleeds, and by belief or information, the deliberate indifference shown by the defendants was the direct cause of the Plaintiffs needless pain and suffering and cruel and unusual punishment, by way of policy or individual choice.

32. The defendants are sued in their individual and official capacity, both jointly and severally.

33. Count one alleges that the Defendants violated the Plaintiff's 14th Amendment rights as protected by the 8th Amendment, whereas they acted with deliberate indifference to his serious medical needs, knowing the plaintiff had been diagnosed by a physician to have a disease (Cirrohsis, liver disease with liver damage) which may have contributed to his ongoing pain.

34. Count two alleges that the Defendants forced the Plaintiff to endure severe pain and suffering and cruel and unusual punishment by allowing a policy to continue that didn't serve to provide the Plaintiff with the individual medical care needed to relieve his severe pain and suffering, and that the defendants acted personally, individually, and jointly within these allegations of cruel and unusual punishment, as well as in Count 1 of deliberate indifference.

35. In Count one the Plaintiff prays for a relief of $5,000,000 U.S. dollars in compensatory damages, as well as declaratory judgment against the defendants for Constitutional Rights violations made against him.

(9)

36. Also in Count one, the Plaintiff seeks $1,000,000 U.S. dollars in Punitive Relief from each defendant for their acts or omissions upon these violations of the Plaintiff's Constitutional Rights, where as deliberate indifference occurred by each individual defendant.

37. In Count two, the Plaintiff prays the Court to award him a relief of declaratory judgment, as well as $5,000,000 U.S. dollars in compensatory relief for the cruel and unusual punishment he endured, as well as for the severe pain and suffering he endured due to the policies practiced by the Defendants, where as they failed to treat him individually and their policies and actions violated his protected Constitutional Rights. Each defendant acting individually.

38. Also in Count two, the Plaintiff prays the Court will award him $1,000,000 U.S. dollars from each Defendant for their individual participation in the violations of his Constitutional Rights where as they allowed the Plaintiff to suffer severe pain and suffering and their violations were cruel and unusual pushment. Relief requested for Punitive damages.

39. Adjusted relief requested as the Court deems appropriate.

40. Recovery of costs to the Plaintiff to pursue this action.

Dated this day (23rd) of March, 2023

In Shelbyville, Illinois

151 N. Morgan
Shelbyville, IL 62565

Respectfully,

*[signature]*

Chad R. Hammond

41. This amended complaint is governed by Rule 15 of the Federal Rule of Civil Procedure.

42. This complaint is to redress the deprivation of the the Plaintiffs Constitutional Rights, and where as the Defendants acted under the color of state law within the entirety of this complaint.

43. This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. §1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

44. The Central District of Illinois, Springfield Division is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where the events giving rise to this claim occurred.

## Verification

"Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure and the Federal Rules of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated this 23rd day of March, 2023.

*signature*

Chad R. Hammond

in Shelbyville, Illinois

151 N. Morgan
Shelbyville, IL 62565